**Russell C. McGARRY, et al., Plaintiffs,**

v.

**SECRETARY OF the TREASURY, et al., Defendants.**

Civ. A. No. 87–551.

United States District Court, District of Columbia.

March 23, 1987.

Gerald M. Feder and David R. Levin, Feder & Associates, Washington, D.C., for Russell C. McGarry and Marty E. Urra.

Edgar N. James, Guerrieri & Sweeney, Washington, D.C., for Intern. Ass'n of Machinists, Dist. Lodge 100.

J. Brian Ferrell, Tax Div., Dept. of Justice, and Roger J. Lerner, Pension Ben. Guar. Corp., Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiffs are trustees, participants, and an employee organization representing participants in Eastern Airlines' ("Eastern") employee pension benefit plan (the "Plan"), established under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* They contend that defendants the Secretary of Treasury and Commissioner of the Internal Revenue Service (hereafter referred to collectively as "IRS") have violated ERISA in the manner in which they have processed Eastern's minimum funding waiver application, and that defendant Pension Benefit Guaranty Corporation ("PBGC") has aided and abetted the violation. Plaintiffs seek preliminary injunctive relief against the IRS pursuant to ERISA's civil suit provision, 29 U.S.C. § 1132, and against PBGC pursuant to 29 U.S.C. § 1303(f). In addition, they seek to enjoin the allegedly unlawful agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Defendants have moved to dismiss the action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I. *Background*

The IRS discharges the Secretary of Treasury's obligations under ERISA, and ERISA's provisions are codified in parallel sections in the Internal Revenue Code. In general, under ERISA employers must meet the minimum funding standards set forth by statute, 29 U.S.C. § 1082, a requirement the IRS enforces through imposition of an excise tax that ultimately equals 100% of delinquent contributions. 26 U.S.C. § 4971. ERISA also provides for waiver of the minimum funding requirement, if the employer can demonstrate business hardship. 29 U.S.C. § 1083. Factors considered in determining "business hardship" include: operating loss of employer, whether there is unemployment or underemployment in the trade concerned, whether the relevant industry's sales and profits are depressed or declining, and whether "it is reasonable to expect that the plan will be continued only if the waiver is granted." 29 U.S.C. § 1083(b). The determination depends on the facts and circumstances of each case, and the IRS has outlined detailed information that an employer must submit in support of its claim of business hardship. Rev.Proc. 83–41, 1983–23 I.R.B. 22. This information includes a factual history of the employer's corporate development, the classes of employees and benefits covered by the Plan, and a discussion of reasons that have led to the employer's situation, such as labor disputes, declining sales, etc. *Id.*

In 1986, Congress amended the funding waiver provisions, motivated by concern that employers frequently used the waiver to obtain a low interest loan from a "captive 'lender'," and by the fact that the claim for unpaid contributions was often subordinated to other creditors' claims, leaving the Plan's assets depleted. *See* H.Rep. No. 99–300, 99th Sess. 1st Sess., at 284(1985), U.S. Code Cong. & Admin. News 1986, pp. 42, 935; Single Employer Pension Plan Amendments Act of 1986, Pub. L. No. 99–272, 100 Stat. 264–67. The new provi-

sions require (1) notice of funding waiver application and consideration of any information received in response, 29 U.S.C. § 1083(a), (e) and (2) a determination in conjunction with PBGC of whether the employer should provide security if the waiver is granted. 29 U.S.C. § 1085a(a).

*Notice and Comment Required*

Initially, the employer seeking the waiver must provide satisfactory evidence that it has given notice of its application to affected employee organizations and participants. 29 U.S.C. § 1083(a), (e). Plaintiffs do not dispute the adequacy of notice. In response, employee organizations may submit "relevant information" in connection with the application. 29 U.S.C. §§ 1083(e), 1085a(b)(2)(B). Beyond requiring the information to be "relevant," the statute does not establish any specific substantive parameters, and does not provide for the organizations to review the application and supporting materials. If an organization chooses to submit this information in writing, the IRS must consider it in its waiver decision. No time limit is set for the submission or review of employee organization information.

The IRS has the obligation to give PBGC notice of the completed waiver application, as well as an "opportunity to comment on such application." 29 U.S.C. § 1085a(b)(1)(B). The IRS must consider these comments, along with any written "views" of the employee organizations. 29 U.S.C. § 1085a(b)(2)(B). The statute contemplates that the waiver application and supporting materials will be forwarded to PBGC in some form, as it specifically states that information provided to PBGC for the purpose of security consultation is to be protected as tax return information. 29 U.S.C. § 1085a(b).

*Plaintiffs' Response to Eastern's Application*

Instead of submitting written information when they got notice of Eastern's

funding waiver application, plaintiffs requested a copy of the waiver application, and informed the IRS that they would submit written comments upon receipt of the application. Plaintiffs received no response from the IRS to this proposal, and never submitted any comments or other information to the IRS concerning the waiver application. Another employee organization, the Airline Pilots Association ("ALPA"), submitted comments in response to Eastern's application.[1] On January 27, 1987, the IRS conditionally granted the funding waiver application, and PBGC is reviewing it for a security determination.

Plaintiffs filed suit against Eastern in the Southern District of Florida under ERISA seeking damages related to Eastern's failure to fund the Plan. This action was brought on March 2, 1987, seeking to preliminarily enjoin PBGC and the IRS from completing the waiver and security process.

Plaintiffs contend that defendants have precluded them from exercising their right to "comment" on the waiver application, in violation of § 1083, and that any waiver decision will necessarily violate § 1085a's requirement that plaintiffs' comments be considered in the waiver process. Specifically, they ask the Court to:

(1) withhold issuance of any waiver until their comments have been reviewed;

(2) withdraw any funding waiver issued absent such review;

(3) require the IRS to provide a copy of the waiver application;

(4) require the IRS to consider their comments, which will not be due until 30 days after plaintiffs receive the application;

(5) provide adequate time for plaintiffs to respond; and

(6) bar PBGC from agreeing to security provisions until plaintiffs' comments have been reviewed.

---

**1.** At oral argument plaintiffs indicated that as they had "free access" to Eastern's financial information for the past three years, they would have been able to submit a considerable amount of information that would have been useful to

the IRS' review of the application. ALPA comments were considered and some of their information was incorporated into the waiver. Affidavit of Kathy Marticello, ¶ 11.

The Court denied plaintiffs' application for a temporary restraining order on March 2, 1987, after defendants stated that no final action would be taken on the security decision prior to a hearing. The Court established an expedited briefing schedule and heard oral argument on March 11, 1987 on plaintiffs' application for a preliminary injunction and on defendants' responsive motion to dismiss. For the following reasons, the Court shall deny plaintiffs' application and grant defendants' motion to dismiss.

## II. *Discussion*

Defendants have moved to dismiss this action for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, the Court must take all factual allegations of the complaint as true, and in the context of a 12(b)(6) motion, must draw all inferences in plaintiffs' favor. *E.g., Doe v. U.S. Department of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). A motion to dismiss under Rule 12(b)(1), on the other hand, calls the jurisdiction of the Court into question, and the plaintiff has the burden to establish jurisdiction. *See, e.g., KVOS, Inc. v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936). The factual allegations of the complaint thus will bear closer scrutiny than under a Rule 12(b)(6) motion, and the Court may consider materials outside the pleadings, such as official documents or matters of general public record. *E.g., Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986); *Walker v. Jones,* 733 F.2d 923, 935 (D.C. Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984) (MacKinnon, J., dissenting). With these principles in mind, the Court shall review the alleged deficiencies of plaintiffs' action.

### A. *Lack of Jurisdiction*

Defendants contend that plaintiffs' alleged injury is insufficient to give them standing to challenge the agencies' review of Eastern's waiver application. To establish the core Article III component of standing plaintiffs must "allege a personal injury fairly traceable to the defendant[s]' allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984).

▌ Plaintiffs allege economic injury, in that the non-payment of the minimum funding contribution would deprive participants and beneficiaries of benefits, should the Plan be terminated. In addition, plaintiffs allege that the IRS has precluded them from exercising their procedural right to "comment" under § 1083. Mere loss of opportunity to comment on a proposed agency ruling has been held to not rise "to the sort of 'distinct and palpable injury' sufficient to invoke the authority of a federal court." *Wells v. Schweiker,* 536 F.Supp. 1314, 1321 (E.D.La.1982), citing *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Accordingly, even if plaintiffs have a right to "comment," their asserted procedural injury is not judicially cognizable and cannot satisfy Article III's standing requirement.

▌ The economic injury that plaintiffs would suffer, on the other hand, is judicially cognizable. To establish Article III standing, plaintiffs must also demonstrate that the challenged action is a "substantial factor" in causing the injury and that there is a "substantial likelihood" that the remedy sought will redress the alleged injury. *Community for Creative Non-Violence v. Pierce,* 814 F.2d 663, 669–70, No. 84–5682, slip op. at 12–13 (D.C.Cir. March 13, 1987). Where the alleged injury and ultimate relief depend upon the actions of third parties not before the court, it is considerably more difficult for a plaintiff to establish this necessary nexus. *Id.* at 669; *Haitian Refugee Center v. Gracey,* 809 F.2d 794, 801–802 (D.C.Cir.1987). Upon closer scrutiny plaintiffs' claims fall short of this basic requirement, as the relief they seek does not redress the specific economic injury alleged. Whether the waiver is granted or denied, and whatever the level of security, the loss to plaintiffs is alleged to result only if and when the Plan is terminated. Plaintiffs seek in this action

merely to present detailed "comments" for the IRS and PBGC to review in connection with Eastern's funding waiver application. Forcing the agency to review information and establish procedures would have only an attenuated effect upon the level of funding and actual benefits to be paid from the Plan. Its impact upon possible termination—the proximate cause of the alleged injury—is even more speculative. Indeed, plaintiffs apparently have recognized this, and have brought a parallel legal action directly against Eastern to recover the funds due under ERISA. Further legal relief may be available from Eastern under the collective bargaining agreement, which will be unaffected by any waiver granted pursuant to ERISA. *E.g., International Union v. Keystone Consolidated Industries, Inc.,* 793 F.2d 810, 814 (7th Cir.1986). Thus, although there is no question that Eastern's failure to make its minimum funding contribution would produce actual economic injury, this injury is not fairly traceable to defendants, and is not redressable by the limited equitable relief sought from the Treasury, IRS, and PBGC in this forum. The Court accordingly lacks jurisdiction over the plaintiffs' claims, and shall grant defendants' motion under Rule 12(b)(1).[2]

### B. *Failure to State a Claim*

■ Even if plaintiffs have standing to maintain this action, they have not stated a claim for relief. Plaintiffs' complaint asserts that defendants have violated ERISA §§ 1083 and 1085a by precluding them from submitting "comments" on Eastern's waiver application for consideration. The statute does not give plaintiffs the right to "comment," however. Plaintiffs seek to bootstrap the notice and "submission of

information" provisions into a "notice and comment" right, which connotes very specific administrative procedures, including a pre-submission review of the basis for the proposed agency ruling. ERISA's language is clear, and the statute simply does not provide for the right of "comment" that plaintiffs assert. Relevant legislative history also fails to support plaintiffs' reading of the statute. Thus, plaintiffs have no statutory right to review Eastern's funding waiver application before they submit any information, and no right to submit formal "comments."

In the Court's opinion, it would help rather than hinder the waiver process if the IRS were to have applicants provide at least a synopsis of their application information to parties given notice. Adequate confidentiality agreements could be used to prevent release of the sensitive information the applications contain. The IRS is presently drafting regulations to govern the new waiver application process, which may well provide for such access to application information. The IRS' failure to have thus far promulgated this—or any—detailed procedure for submission of information does not establish a denial of plaintiffs' right to submit information. Plaintiffs elected to withhold their information in the hopes that the IRS would first implement the review procedures plaintiffs had proposed. This was their option, but they cannot now turn to the courts for redress. The procedures plaintiffs seek must be provided by Congress or by the IRS, and cannot be engrafted onto the statute by the Court.

Plaintiffs' right under ERISA therefore was to submit written information expressing their views on Eastern's waiver applica-

---

**2.** Defendants also contended that exercise of the Court's jurisdiction was barred by the Anti-Tax Injunction Act, 26 U.S.C. § 7421. Although the purpose of plaintiffs' complaint is arguably to force the IRS to deny Eastern's funding waiver and collect the excise tax imposed under 26 U.S.C. § 4971, the Anti-Tax Injunction Act does not bar suits that seek to require the government to levy a tax, only those that try to restrain the government from collecting funds. *See, e.g., McGlotten v. Connally,* 338 F.Supp. 448, 453–54 (D.D.C.1972) (three-judge panel). Defendants'

jurisdictional arguments based on a failure to exhaust administrative remedies and on the unavailability of APA review are similarly without merit. At oral argument, defendants questioned whether suit against the IRS would lie under ERISA's civil suit provision, 29 U.S.C. § 1132(a)(3). While the Court also is concerned over the extent to which ERISA waives sovereign immunity, it is satisfied that review is at least potentially available under the APA. The Court's disposition of the complaint makes resolution of this issue unnecessary.

tion. They admit that they had relevant information which they chose not to submit. The surrounding allegations do not state a claim of statutory violation by any of the defendants. Accordingly, defendants' motion to dismiss under Rule 12(b)(6) should be granted.

An order consistent with the above conclusions accompanies this opinion.

### ORDER OF DISMISSAL

Upon consideration of plaintiffs' application for a preliminary injunction, defendants' opposition and motion to dismiss, plaintiffs' opposition thereto, and argument of counsel, and for the reasons stated in the accompanying opinion, it is this 24th day of March, 1987

ORDERED that plaintiffs' application for a preliminary injunction is denied, defendants' motion to dismiss is granted, and this action is hereby dismissed.